## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANTANDER CONSUMER USA, INC.,<br><br>                    Plaintiff,<br><br>         v.<br><br>THE TOWNSHIP OF FAIRFIELD, AND<br>CAMP AUTO & TRUCK PARTS, INC. d/b/a<br>CAMP AUTO AND TRUCK,<br><br>                    Defendants. | (Electronically Filed)<br><br>Civil Case No.:<br><br>**COMPLAINT** |

Plaintiff, Santander Consumer USA, Inc. ("Santander"), as and for its Complaint against Defendants, The Township of Fairfield ("Fairfield") and Camp Auto & Truck Parts, Inc. d/b/a Camp Auto and Truck ("Camp Auto"), alleges:

## NATURE OF ACTION

1.      Fairfield regularly seizes vehicles as part of its law enforcement activity but has no procedure for disposing of seized vehicles consistent with the basic due process requirements of notice and a hearing. Instead, Fairfield employs the outdated and constitutionally unsound practice of summarily turning over control seized vehicles to the private towing company that towed the vehicle when Fairfield seized it. In this regard, Fairfield's policy is to enlist a towing garage to tow and store vehicles and allow those garages to lien and/or sell the vehicle as a means to cover the costs of towing and storage.

2.      Fairfield's policy and practice of summarily turning over seized vehicles to private tow companies is a joint enterprise from which Fairfield benefits by avoiding the cost of preserving the seized vehicles and by avoiding the cost of having to pay for towing services, because the tow company accepts the vehicle as compensation for the services it renders to Fairfield in lieu of money. The tow company benefits by using its control over the vehicle

(created under mantle of authority from Fairfield) to profit by selling the vehicle or by conditioning release of the vehicle upon payment of money to the tow company.

3.      Here, after seizing a vehicle on which Santander holds a lien, Fairfield afforded no due process to Santander and instead summarily disposed of its interests in that vehicle by giving it to Camp Auto as payment for the services that Fairfield had contracted Camp Auto to provide. Camp Auto accepted the vehicle from Fairfield as compensation, asserted an *ex parte* lien for those services, demanded that Santander satisfy that *ex parte* lien—which Camp Auto insisted took priority over Santander's lien—before it would relinquish possession of Santander's collateral. At no time was Santander afforded notice, a hearing, or just compensation for Fairfield's taking of Santander's collateral.

## JURISDICTION AND VENUE

4.      This is a declaratory judgment/civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivation of Santander's rights secured by the Fourth, Fifth and the Fourteenth Amendments to the United States Constitution, and accordingly jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), as well as 28 U.S.C. § 1331.

5.      The remaining causes of action are appropriate pursuant to 28 U.S.C. § 1367 for interrelated state law claims that arise from the occurrences giving rise to the Federal claims, which have a common nucleus of operative fact.

6.      Venue lies in the Court pursuant to 28 U.S.C. § 1391), because the Defendants reside in this district, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**PARTIES**

7.      Plaintiff Santander is a corporation incorporated in the State of Illinois, in the business of taking assignments of retail installment contracts and holding the associated lien interests in vehicles, including being the duly perfected lienholder in the vehicle, which is the subject of this action, a 2015 Chevrolet Silverado, VIN #: 3GCPCRECXFG310593 (the "Vehicle").

8.      Defendant Fairfield is a municipality organized and existing under the laws of the State of New Jersey.

9.      Defendant Camp Auto is, upon information and belief, a corporation incorporated in the State of New Jersey which is engaged in the business of towing and storing motor vehicles.

**FACTS**

**Santander's interest in the Vehicle**

10.      Santander holds a duly perfected security interest in the Vehicle.

11.      Before December 23, 2021, and before any other facts relevant to this action, non-party Osmel Benitez and Inais Castro (the "Customers") entered into a retail installment contract to finance the purchase of the Vehicle, which contract was assigned to Santander. By virtue of that transaction, Santander obtained its perfected security interest in the Vehicle.

12.      Before, on, and after December 23, 2021, Santander held and continues to hold a first priority lien interest in the Vehicle, which has been duly recorded on the title to the Vehicle.

13.      Before December 23, 2021, the Customers defaulted on the payment obligations under the retail installment contract, thereafter entitling Santander to immediate possession of the Vehicle.

14.     By virtue of Fairfield's seizure of the Vehicle, and by virtue of amounts Camp Auto claimed by way of possessory lien on the Vehicle, the Customers were also and further in non-monetary default of the terms of the retail installment contract, thereafter, also further entitling Santander to immediate possession of the Vehicle.

**Fairfield seized the Vehicle, in which Santander held a protected interest, and gave it to Camp Auto for disposal**

15.     On or about December 23, 2021, Camp Auto actively and regularly towed and stored vehicles at the direction of Fairfield police officers acting in the regular course of their duties as law enforcement officers.

16.     On or about December 23, 2021, Fairfield took custody of the Vehicle and instructed Camp Auto to tow it from the roadway and store it at Fairfield's direction.

17.     Fairfield assigned impound number 21-43898 to the Vehicle.

18.     Santander had no involvement with or knowledge of the operation of the Vehicle at the time it was seized by Fairfield Police and/or Camp Auto.

19.     On or about June 8, 2022—167 days later—Santander discovered from communications with the Customer that the Vehicle had been impounded.

20.     Santander did not receive written notice from either Fairfield or Camp Auto that the vehicle had been seized months earlier.

21.     Upon learning that the Vehicle was impounded, Santander demanded that the Vehicle be released to it, and Camp Auto refused unless Santander paid the fees demanded by Camp Auto in order to recover the Vehicle.

22.     When Santander contacted Camp Auto to recover the Vehicle, Camp Auto demanded payment of towing and storage charges as a condition for release of the Vehicle.

Camp Auto provided an invoice in the amount of $11,283.31 which it back-dated to the date of seizure (December 23, 2021).

23.     Camp Auto asserted that it was able to detain the Vehicle from Santander because Camp Auto claimed a lien on the Vehicle for towing and storage charges.

24.     There is no law which requires Santander to pay Fairfield's towing and storage bill for Camp Auto's alleged services.

25.     To the extent Fairfield or Camp Auto seek to rely on any New Jersey State law to justify their conduct, these laws are unconstitutional as applied to the circumstances.

26.     Santander did not pay the fees demand by Camp Auto, and Camp Auto refused to release the Vehicle to Santander.

27.     Fairfield benefited from Camp Auto's detention of the Vehicle to secure payment, in that Fairfield obtained Camp Auto's impound storage services, as well as Camp Auto's towing services to clear the roadway, with no payment (or reduced payment) of money from Fairfield to Camp Auto.

28.     Camp Auto only possessed the Vehicle by virtue of its relationship with Fairfield and acted in concert with Fairfield to seize, detain and dispose of the Vehicle. Camp Auto had no other right to remove the Vehicle from the roadway and hold it against anyone. Camp Auto was, therefore, acted under color of law when it towed, stored and/or disposed of the Vehicle.

**Fairfield's and Camp Auto's regular policies, customs and/or practices which were applied to the Vehicle**

29.     Fairfield and Camp Auto's conduct in relation to Santander and the Vehicle on and after December 23, 2021, comported with both Fairfield's and Camp Auto's regular policies, customs and/or practices for the handling of Vehicles encountered and impounded under the same or similar circumstances.

30.    Fairfield carries out its essential functions through its own police, who, among other things, seize vehicles for a variety of reasons ranging from alleged criminal infractions to parking violations.

31.    Fairfield delegates a portion of the performance of its essential functions to Camp Auto. Specifically, Fairfield police utilize Camp Auto to tow away, store and dispose of vehicles seized by Fairfield police acting in the course of their duties as law enforcement officers.  In essence, Camp Auto is Fairfield's vehicle impound contractor for the area relevant to this action.

32.    Pursuant to this relationship, Fairfield exercises governmental authority to seize vehicles in concert with Camp Auto.

33.    Regardless of the reason for Fairfield's initial seizure of a given vehicle, Fairfield does not return those vehicles to a person with a preexisting property interest when the justification for Fairfield's seizure has passed.  Instead, Fairfield places seized vehicles in the possession of its tow operators, including Camp Auto, for storage and ultimate disposal, permitting the assertion of an *ex parte* possessory lien to secure payment of charges relating to the towing, storage, and disposal.

34.    Camp Auto (and the other impound contractors) accept the seized vehicles from Fairfield—which vehicles Fairfield does not own—as either partial or total payment for the towing and storage services Camp Auto provides to Fairfield.

35.    Rather than receiving monetary compensation from Fairfield for the services Fairfield has contracted Camp Auto to provide, Camp Auto instead impresses an *ex parte* possessory lien for towing and storage fees, which it claims supersedes any other persons' rights in these vehicles.

36.    After assessing an *ex parte* possessory lien on impounded vehicles, Camp Auto refuses to return possession of the vehicles to any other person, even those with pre-existing property rights in the vehicles, while claiming additional daily storages charges.

37.    To effectuate eventual disposal of an impounded vehicle, the Defendants transmit documents to those with preexisting property interests that are the same or similar to the ones Defendants transmitted to Santander.

38.    To effectuate eventual disposal of an impounded vehicle, Fairfield insists persons with preexisting property interests satisfy Camp Auto's *ex parte* possessory lien, and further asserts that if this unilateral condition is not satisfied, Defendants can take title to the impounded vehicles and eliminate all other persons interest in those vehicles.

39.    Fairfield benefits from Camp Auto's assertion of an *ex parte* lien on, and eventual sale of, seized vehicles. Without Camp Auto's conduct, Fairfield would be forced to pay monetary consideration to Camp Auto for the services Camp Auto provides Fairfield instead of compensating Camp Auto with possession and authority to assert a lien on the impounded vehicles.  Moreover, upon information and belief, Camp Auto pays a portion of the proceeds it obtains from others back to Fairfield as part of its agreement(s) with Fairfield.

40.    It is Fairfield's and Camp Auto's regular policy and custom, in the course of the above-described conduct, to not obtain a warrant for any of the following actions (for which no valid exception to the warrant requirement exists):

A.    The initial seizure of a vehicle;

B.    The turnover of possession of a vehicle to Camp Auto;

C.    The decision by Fairfield and/or Camp Auto to continue to detain vehicles after the initial reason for the seizure has passed;

D.    The decision of Camp Auto to assert an *ex parte* possessory lien and the amount of that lien;

E.    Camp Auto acting to acquire ownership by terminating all property interests in the vehicle; and

F.    The eventual sale of a vehicle.

41.    Even if the initial seizure of the vehicles in question were made under a valid exception to the Fourth Amendment's warrant requirement, a (possibly) valid initial warrantless seizure does not justify any action Fairfield or Camp Auto decide to take thereafter, as referenced in ¶ 40 (B-F), *supra*. Rather, Fairfield and Camp Auto are required to obtain a warrant, or new justification for a warrantless seizure once the reasons for the (possibly valid) initial warrantless seizure have dissipated. Alternatively, the subsequent actions rendered the seizure unreasonable in its manner of execution, even if done with an initially valid exception to the warrant requirement.

42.    It is also Fairfield's and Camp Auto's regular policy and custom, in the course of the above-described conduct, to not provide any form of constitutionally adequate notice, nor any hearing whatsoever, in relation to any of the following actions:

A.    The initial seizure of a vehicle;

B.    The turnover of possession of a Vehicle to Camp Auto;

C.    The decision by Fairfield and/or Camp Auto to continue to detain vehicles after the initial reason for the seizure has passed;

D.    The decision of Camp Auto to assert an *ex parte* possessory lien and the amount of that lien;

E.    Camp Auto acting to acquire ownership by terminating all property interests in a vehicle; and

F.    The eventual sale of the vehicle.

8

43.     Any notification(s) transmitted by Fairfield and/or Camp Auto relating to the conduct referenced in ¶ 42 (A)-(F) does not satisfy the constitutional due process requirement of notice, because these communications are notifications of Fairfield's and/or Camp Auto's unilateral demands, not notice of an opportunity to be heard (which does not occur).

44.     These actions, all taken in accordance with Fairfield's and Camp Auto's regular policies and customs for seizing and disposing of seized motor vehicles, violate the Fourth, Fifth and Fourteenth Amendment to the United States Constitution.

45.     Fairfield and Camp Auto knew or should have known that their actions violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

**COUNT I**
**Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983**
**(Deprivation of Property by Unreasonable Seizure)**
**(as against all Defendants)**

46.     Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

47.     Santander is the holder of a protected property interest in the Vehicle.

48.     Defendants meaningfully interfered with Santander's protected interest in the Vehicle by towing it, detaining it, withholding possession from Santander, demanding payment and other conditions for release of it, and threatening to ultimately take ownership of it free from Santander's lien.

49.     By these actions, Defendants acted under color of law to seize the Vehicle within the meaning of the Fourth Amendment to the United States' Constitution.

50.     Defendants' seizure of the Vehicle was unaccompanied by a warrant.

51.     Defendants' seizure of the Vehicle was unaccompanied by any legitimate exception to the warrant requirement. Alternatively, to the extent the initial seizure was

accompanied by any arguably legitimate exception to the warrant requirement, it was carried out in an unreasonable manner of execution insofar as the seizure exceeded the scope necessary to complete any legitimate task associated with the purported warrant exception for which the vehicle was seized.

52.    Defendants' seizure of the Vehicle was therefore unreasonable in violation of the Fourth Amendment to the United States' Constitution.

53.    Defendants' unreasonable seizure of the Vehicle was accomplished in accordance with the Defendants' standard policy and/or custom for the handling and disposal of seized vehicles.

54.    As a direct and proximate result of Fairfield's and Camp Auto's violation of Santander's Constitutional right to be free from unreasonable seizures, Santander has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

55.    Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE,** Santander prays for judgment against Defendants Fairfield and Camp Auto, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages (as to Camp Auto only), statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

**<u>COUNT II</u>**
**Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983**
**(Deprivation of Property Without Due Process of Law)**
**(as against all Defendants)**

56.    Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

10

57.     Santander is the holder of a protected property interest in the Vehicle.

58.     Fairfield and/or Camp Auto's actions resulted in the deprivation of Santander's protected property interests in the Vehicle.

59.     Neither Fairfield nor Camp Auto had any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle before a judge or other neutral decisionmaker.

60.     Neither Fairfield nor Camp Auto provided Santander for an opportunity to be heard in relation to any of either Defendants' actions in relation to the Vehicle in any venue at any time.

61.     Because neither Fairfield nor Camp Auto provided any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle by a judge or other neutral decisionmaker, neither provided Santander with constitutionally adequate notice of that non-existent hearing procedure.

62.     The manner in which Santander became aware of Fairfield and Camp Auto's seizure of the Vehicle, as well as Camp Auto's continued possession of the Vehicle, did not constitute adequate notice for the purposes of due process.

63.     Defendants' deprivation of Santander's rights in the Vehicle was therefore accomplished without due process of law in violation of the Fifth and Fourteenth Amendment to the United States Constitution

64.     Defendants' deprivations of Santander's rights in the Vehicle were accomplished in accordance with the Defendants' standard policy and/or custom for the handling and disposal of seized vehicles.

65.     As a direct and proximate result of Fairfield's and Camp Auto's violation of Santander's Constitutional right to be free from deprivations without due process of law, Santander has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

66.     Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE,** Santander prays for judgment against Defendants Fairfield and Camp Auto, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages (as to Camp Auto only), statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

## COUNT III
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Taking of Property Without Just Compensation)
### (as against Fairfield)

67.     Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

68.     Santander is the holder of a protected property interest in the Vehicle.

69.     Fairfield compensated Camp Auto, in whole or in part, by turning over possession of the Vehicle to Camp Auto, who lawfully possessed the Vehicle only by virtue of having obtained it from Fairfield.

70.     Camp Auto accepted the Vehicle as compensation, in whole or in part, for the services it provided to Fairfield, namely the towing and storage of the Vehicle that Fairfield had seized.

71.     Fairfield destroyed Santander's priority lien in the Vehicle, and its possessory rights pursuant to its contract with its Customer, by turning over the Vehicle to Camp Auto and

permitting it to assert a possessory lien that both Defendants asserted took priority over Santander's lien and prevented Santander from exercising its contractual possessory rights in the Vehicle.

72.    Fairfield thereby took Santander's interests in the Vehicle—its right to possession of the Vehicle and its lien priority in the Vehicle—for a public use.

73.    Fairfield did not compensate Santander for the taking of its interests in the Vehicle.

74.    Fairfield therefore took Santander's property for public use without just compensation in violation of the takings clause of the Fifth Amendment to the United States' Constitution.

75.    Fairfield's taking of Santander's rights in the Vehicle was accomplished in accordance with Fairfield's standard policy and/or custom for the handling and disposal of seized vehicles.

76.    As a direct and proximate result of Fairfield's violation of Santander's Constitutional right to be free from takings without just compensation, Santander has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

77.    Santander is, therefore, entitled to relief under 42 U.S.C. § 1983

**WHEREFORE,** Santander prays for judgment against Defendant Fairfield, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

## COUNT IV
### Violation of N.J.S.A. § 10:6-2(c)
### Violation of New Jersey Constitution
### (as against all Defendants)

78.     Santander realleges and incorporates herein by reference to the allegations set forth in the prior paragraphs herein.

79.     Fairfield and Camp Auto's actions also violate the corresponding protection of the New Jersey State Constitution as set forth above.

**WHEREFORE,** Santander prays for judgment against Defendants Fairfield and Camp Auto, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages (as to Camp Auto only), statutory damages, fees and costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT V
### Declaratory Relief
### (as against all Defendants)

80.     Santander realleges and incorporates herein by reference to the allegations set forth in the prior paragraphs herein.

81.     An actual controversy has arisen and now exists between Santander and Defendants warranting declaratory relief pursuant to 28 U.S.C. 2201.

82.     Santander contends Defendants' conduct is unconstitutional.

83.     Defendants assert that their conduct is constitutional.

84.     Camp Auto also asserts a possessory lien in the Vehicle which it claims takes priority over Santander's prior perfected lien, which Santander disputes.

85.     The parties' will not resolve their disagreements over their respective rights in seized vehicles without a judicial declaration.

86.     A judicial declaration will also serve the public interest, insofar as Fairfield seizes hundreds of cars every year under the same or similar circumstances to the Vehicle, which it subjects to the same policies and customs that Santander contends violate the United States and New Jersey constitutions, including many others in which Santander holds liens.

87.     Santander seeks a declaration that, to the extent Defendants seek to rely on any provisions of state or local law to justify the above-described actions, those laws are unconstitutional as applied in violation of the supremacy clause and the aforementioned constitutional rights.

**WHEREFORE,** Santander prays for an appropriate judicial declaration of the Parties' respective rights, and such other and further relief as the Court deems just and proper.

## COUNT VI
### Replevin
### (as against Camp Auto only)

88.     Santander realleges and incorporates herein by reference to the allegations set forth in the prior points herein.

89.     Santander holds a valid lien in the Vehicle and is entitled to possession pursuant to its retail installment contract with the Customer.

90.     Santander has demanded that Camp Auto surrender the Vehicle to Santander's possession.

91.     Camp Auto has refused, and continues to refuse, to surrender the Vehicle to Santander's possession.

92.     Santander is entitled to an order requiring Camp Auto to immediately turn over possession of the Vehicle to Santander.

**WHEREFORE**, Santander prays for judgment against Defendant Camp Auto for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

### COUNT VII
**Conversion**
**(as against Camp Auto only)**

93.    Santander incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

94.    Santander has a lien in the Vehicle, and in accordance with its rights under its retail installment contract with the Customer, has become entitled to immediate possession of the Vehicle.

95.    Camp Auto has refused, and continues to refuse, to surrender possession of the Vehicle to Santander.

96.    By these actions, Camp Auto has purposefully, knowingly and/or intentionally exercised dominion and control over the Vehicle, wrongfully interfering with Santander's rights to possession of the Vehicle.

97.    Santander has suffered, and continues to suffer, damages as a result of Camp Auto's actions.

**WHEREFORE**, Santander prays for judgment against Defendant Camp Auto for actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper

**COUNT VIII**
**Tortious Interference**
**(as against Camp Auto only)**

98.     Santander incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

99.     Santander incorporates herein by reference the allegations set forth in the above paragraphs, as

100.     Camp Auto wrongful actions as set forth above constitute a knowing and intentional tortious interference with Santander's contractual relations and/or prospective economic advantage with respect to the Vehicle.

101.     Santander has suffered, and continues to suffer, damages as a result of Camp Auto actions.

**WHEREFORE**, Santander prays for judgment against Defendant Camp Auto for actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper

Dated: January 10, 2023

**NORRIS, McLAUGHLIN, PA**
Attorneys for Plaintiff

By: _/s/  Nicholas Duston_____
        Nicholas A. Duston
        400 Crossing Blvd. 8th Fl.
        Bridgewater, NJ 08807
        naduston@norris-law.com
        (908)-722-0700

17

## **LOCAL CIV. R. 11.2 CERTIFICATION**

I certify that to the best of my present knowledge, the matter in controversy is not the subject

of any other action pending in any court, or of any pending arbitration or administrative proceeding.

_/s/Nicholas A. Duston_____
Nicholas A. Duston, Esq.
**NORRIS McLAUGHLIN, PA**
400 Crossing Blvd. 8th Fl.
Bridgewater, NJ  08807
(908) 722-0700
_Attorneys for Plaintiffs_

Dated: January 10, 2023